UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN TATE | CIVIL ACTION |
| VERSUS | NO. 25-1400 |
| WARDEN MICHELLE DAUZAT | SECTION "M" (2) |

## REPORT AND RECOMMENDATION

Before the court is petitioner Steven Tate's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 4), which was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1] Also pending before the court are Tate's Motion to Stay and Hold in Abeyance (ECF No. 2) and Motion for Evidentiary Hearing (ECF No. 23). For the following reasons, I recommend that the Motion to Stay and Motion for an Evidentiary Hearing be **DENIED** and the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

On March 30, 2017, Tate, also known as "Bubba," was indicted by a Jefferson Parish grand jury on one count of second-degree murder and one count of conspiracy to commit armed robbery.[2]

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id.* § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  *Id.* § 2254(e)(2)(B).

[2] The state court record was electronically filed by the State at ECF No. 15. ECF No. 15-1 at 34-35, Grand Jury Indictment, 3/30/17. LL was also indicted on both charges, but as a juvenile at the time, he was tried separately.

At arraignment, Tate pled not guilty to both counts.[3]

The Louisiana Fifth Circuit Court of Appeal summarized the facts established at trial as follows in relevant part:

> On November 29, 2016, Mr. Tate and his childhood friend L.L. were together at L.L.'s grandmother's house playing video games. L.L.'s grandmother and his two teenage-sisters, A.L. and T.L., were also present in the home that day. Mr. Tate considered L.L. and his younger sisters like family. While playing video games, a decision was made to purchase marijuana from Ethan Allen ("Mr. Allen"), a local drug dealer and the victim in this case. Text messages presented at trial demonstrated that Mr. Allen and A.L. had a dealer and customer relationship based on the purchase of drugs. A text message sent from A.L.'s phone was sent requesting a "$10 bag" from Mr. Allen. Mr. Allen was given an address to meet, which was located across the street from L.L.'s grandmother's house. Mr. Tate, testifying in his own defense, admitted that he also texted Mr. Allen the same meeting address.

> When Mr. Allen arrived at the agreed upon location, Mr. Tate and L.L. approached Mr. Allen's vehicle. Mr. Tate testified that he did not contact Mr. Allen about the purchase of marijuana. Mr. Tate explained that it was not his intent to purchase drugs from Mr. Allen, but instead to talk to Mr. Allen about the "relationship" Mr. Allen had with L.L.'s younger sister, A.L. Mr. Tate testified that he did not know Mr. Allen but knew that he was an adult and that Mr. Allen was "messing with [A.L.]," whom Mr. Tate stated was 14 or 15 at the time. Mr. Tate testified that he was told that Mr. Allen was coming over to bring A.L. money. Mr. Tate stated that although A.L. was secretive about the transaction, T.L. told him about it. Mr. Tate testified that he was curious to meet Mr. Allen and that he "wanted to him know how old [A.L.] was and see who he was." Mr. Tate told T.L. to let Mr. Allen know that he (Mr. Tate) would come out to Mr. Allen's car to get the money for A.L. Mr. Allen then called Mr. Tate directly. Mr. Tate explained that he told Mr. Allen to go to the address across the street from A.L.'s house because it was the address that T.L. had previously given to Mr. Allen.

> Mr. Tate testified that when Mr. Allen arrived, he (Mr. Tate) was already outside with L.L., waiting on someone to pick him up. Mr. Tate admitted that at that time, he was armed with a .45 caliber Springfield Armory gun in his waistband and that L.L. also had a gun. Mr. Tate explained that when Mr. Allen pulled up to the curb, he walked to Mr. Allen's car, opened the passenger door, and stood in the doorway.

---

[3] ECF No. 15-1 at 1260, Min. Entry, 4/17/17.

According to Mr. Tate, Mr. Allen tried to hand him money, but he told him, "Just hold it. I just want to talk to you right quick." Mr. Tate asked if he was A.L.'s boyfriend, and Mr. Allen stated that he was not. Mr. Tate questioned why Mr. Allen would be bringing her money, and Mr. Allen asked why he was interested in knowing. Mr. Tate told the jury that he explained to Mr. Allen that he was "like a big brother to [A.L.] and she's only 15," and that he hoped they were not having sex. Mr. Tate indicated that the previously calm interaction grew heated.

Mr. Tate testified that he then told Mr. Allen, "[D]on't put up on her no more [sic] and she don't need no [sic] money from you." According to Mr. Tate, Mr. Allen replied, "What, you gonna [sic] stop me" and pulled out a gun and placed it in his lap, facing towards Mr. Tate. Mr. Tate told the jury that he then began backing up and reaching for his own gun. Mr. Tate testified that Mr. Allen fired two shots, and Mr. Tate realized that he had been shot and began returning fire. Mr. Tate testified that he fired two shots and then he was shot again. Mr. Tate testified that he was shot six times and that it felt like Mr. Allen was trying to kill him. Mr. Tate stated that he then ran under the carport and threw his gun in the grass. He then told L.L. to call the police and an ambulance before passing out.

Mr. Tate denied setting Mr. Allen up for a robbery and stated there was no drug transaction. Mr. Tate admitted that he shot and killed Mr. Allen, but said he did so in self-defense.

Kremly Marrero testified at trial that on November 29, 2016, he lived at 803 Gulf Drive. At around 6:00 or 6:30 p.m., he and his wife heard gunshots. He described it as two shots followed by a slight pause and then an array of shots. Mr. Marrero testified that he walked outside at the same time as his neighbor, who lived at 801 Gulf Drive. Mr. Marrero testified that he saw a vehicle "coasting" down towards the end of the street. Mr. Marrero stated that he saw Mr. Tate under the carport where L.L. and his grandmother lived. L.L. was screaming hysterically, and Mr. Marrero went to help Mr. Tate, whom Mr. Marrero described as "bleeding out everywhere." Mr. Marrero assisted Mr. Tate until the police and EMS arrived.

Debra Lowry testified that she is the grandmother of L.L., A.L., and T.L. She described Mr. Tate as her grandson L.L.'s friend. She said that Mr. Tate was like a brother to L.L. and his two sisters. On November 29, 2016, Ms. Lowry was inside her house at 812 Gulf Drive with A.L. and T.L. when a shooting occurred. Mrs. Lowry testified that she heard what she believed to be firecrackers. Then L.L. ran inside the house, and Mrs. Lowry went outside where she found Mr. Tate, lying on her front porch bleeding. Mrs. Lowry testified that she "tried to call 911, but [she] was really nervous." She stated that she believed she called 911 and when she realized that the police were on their way, she told her granddaughters to dispose of their marijuana. Thereafter, Mrs. Lowry accompanied L.L. to the police bureau where he provided a statement. While at the police bureau, L.L. used his

grandmother's phone to text his sister T.L., and as a result, Mrs. Lowry's phone was taken. Mrs. Lowry confirmed that her grandson L.L. was arrested for the shooting and was ultimately convicted.

The State also called as witnesses several investigating officers with the Gretna Police Department involved in this case as well as several expert witnesses.

Officer Corey Boudreaux testified that he was dispatched to the scene. Upon arrival, he came upon a man in the street waving his arms, who told him that a man, later identified as Mr. Allen, had been shot and was located in a vehicle. The officer stopped and observed Mr. Allen, who had a bundle of money and a cell phone in his lap and who was gasping for breath. Officer Boudreaux removed Mr. Allen from the vehicle and began performing CPR until EMS arrived. Mr. Allen, however, died on the scene. Testimony elicited at trial established that Mr. Allen had been shot in his side, and that the shot had gone through multiple organs.

Officer Boudreaux testified, upon inspecting the vehicle, they located a projectile in the driver's seat, three casings in the rear of the vehicle, and one casing outside the vehicle. A .40 caliber Smith and Wesson firearm was located in the vehicle and seized. Officer Boudreaux saw no marijuana, other drugs, or any drug paraphernalia in the vehicle. Mr. Allen's vehicle was seized pursuant to a search warrant and seven cartridge casings, two projectiles, and .40 caliber Smith and Wesson firearm were recovered from inside the vehicle.

Officer Kevin Fernandez, a crime scene technician with the Gretna Police Department, testified that Mr. Allen's vehicle was processed and described the projectile damage inside the car. He testified that the vehicle had a hole from a projectile in the front passenger door as well as holes from projectiles on the roof of the vehicle. Two bullet holes were found in the rain guard, which the officer explained is the plastic shield that goes over the car window. Officer Fernandez stated there was also damage to the interior car door from another projectile.

Officer Damond Bartlett responded to the scene at 812 Gulf Drive. Upon his arrival, he observed several people in front of the residence screaming that someone had been shot. He was directed to the carport, where he observed Mr. Tate lying on the ground suffering from multiple gunshot wounds to the torso. He located shell casing projectiles in front of the residence and observed shattered glass on the street. EMS arrived, and Mr. Tate was transported to the hospital. Officer Bartlett testified that he did not find marijuana or drug paraphernalia while canvassing the scene.

Officer Fernandez also testified that he photographed the scene at 812 Gulf Drive. At trial, he identified several photographs of the scene, including pictures of the home: the carport and the rear exterior of the residence, as well as the interior

of the home. He testified that a loaded 9 millimeter caliber Sig Sauer pistol was recovered from the top of a shed. A .45 caliber Springfield Armory pistol was recovered in the backyard. Both firearms were seized.

Detective Ralph Dunn testified that he collected video surveillance from a residence in the area of the 800 block of Gulf Drive and from a building where Mr. Allen's vehicle had come to a stop. Detective Dunn testified that the video depicted Mr. Allen's vehicle going off the road.

A search warrant for Mr. Allen's vehicle was obtained and an iPhone was seized from the vehicle. Officer Ashton Gibbs testified that the data retrieved from the iPhone evidenced a series of text messages and phone calls to and from two particular numbers directing Mr. Allen to Gulf Drive. One of those numbers was associated with Mr. Tate, and the other number was associated with A.L. Officer Gibbs testified that the nature of the text messages indicated that a drug deal was being set up.

Lieutenant Brandon Leblanc, formerly with the Gretna Police Department, testified that he was involved in the investigation of the November 29, 2016 homicide, during which he reviewed phone records. On November 29, 2016, between 5:30 p.m. and 5:58 p.m., four calls were placed between Mr. Allen and Mr. Tate. Lieutenant Leblanc also testified that L.L. and A.L. were involved in getting Mr. Allen to the scene that evening. Lieutenant Leblanc stated that there were text messages pertaining to L.L. robbing Mr. Allen; however, there was nothing from Mr. Tate's phone related to robbing Mr. Allen. Lieutenant Leblanc further testified that Mr. Allen, who was 22, and A.L., who was 15, had an ongoing relationship which involved A.L.'s purchasing of marijuana from Mr. Allen.

Lieutenant Solomon Burke, an expert in mobile device forensics, performed data extractions on the mobile devices connected to the investigation. Lieutenant Burke indicated that no texts between A.L. and Mr. Allen contained the word "sex" and that only two texts contained the word "baby." Lieutenant Burke's testimony corroborated Lieutenant Leblanc's testimony regarding the exchange of phone calls between Mr. Allen's phone and Mr. Tate's phone, indicating that there were two calls each way and a text to Mr. Allen's phone containing the address 805 Gulf Drive. At 5:44 p.m. on the day in question, Mr. Allen received a phone call. He then made a call at 5:46 p.m., and received another call at 5:58 p.m. There was an outgoing call at 6:07 p.m. to Mr. Tate that lasted four seconds. Mr. Allen's phone made a 911 call at 6:09 p.m.

Dr. Dana Troxclair, a forensic pathologist, with the Jefferson Parish Coroner's Office, conducted an autopsy of Mr. Allen. She testified that she found a gunshot wound to the back of Mr. Allen's armpit and an exit wound to his left upper back. Dr. Troxclair testified that the entry wound was consistent with Mr.

Allen's arm not being fully stretched out. Dr. Troxclair testified that Mr. Allen bled out as a result of the gunshot wound.

Linda Tran, an expert in firearms and tool mark examination, issued a scientific analysis report in this case. She testified that she examined a Springfield Armory pistol and determined that two .45 caliber cartridges had been fired from that gun. Additionally, eight cartridge casings and a copper jacketed projectile were determined to have been fired from a .40 caliber Smith and Wesson pistol.

Dr. Tim Scanlan, a crime scene reconstructionist, testified that three .45 caliber fired cartridge casings were recovered, which matched a .45 caliber Springfield weapon. Dr. Scanlan testified that he was present when Mr. Allen's vehicle was processed and analyzed pursuant to a search warrant. He stated that two projectiles and seven casings were recovered from the interior of Mr. Allen's vehicle, and one casing was recovered outside the vehicle under Mr. Allen's body. Dr. Scanlan testified that on inspection, Mr. Allen's vehicle had five bullet holes and one bullet strike mark. He explained that based on the holes and markings, he was able to determine that one of the bullet holes that went through the car door evidenced that the door was open at the time the shot was fired. Additionally, Dr. Scanlan testified that he determined that two bullet holes found in the ceiling showed metal pointing in the direction of travel, "buckling outward" and therefore was evidence that the shots originated from inside the car. He further stated that the angle of fire was going upward from the passenger side to the driver's side of the vehicle. From this information, Dr. Scanlan testified that he concluded that based on the trajectory of the shots, they originated from the front driver's seat area. He explained that "the angle of fire would be upward straight through the roof." Additionally, Dr. Scanlan testified that two other shots originated from inside the vehicle based on the bullet holes. Dr. Scanlan also explained that a bullet strike showed that there was another bullet fired from inside the vehicle "facing back toward that...front driver's seat and striking" before "falling down and coming to rest." Moreover, Dr. Scanlan testified that a projectile that came to rest in the front passenger-side door had been fired from the .40 caliber Smith and Wesson firearm recovered from the rear passenger floorboard of the vehicle.

Dr. Scanlan testified that the ballistic evidence was consistent with an individual standing outside Mr. Allen's vehicle and firing into the open door. He described the evidence as consistent with "focused fire" and showed a stationary shooter. By comparison, Dr. Scanlan testified that the weapon fired by the driver of the vehicle was "sporadic unfocused fire" as evidenced by the strike mark, the broken window, bullet holes in the rain guard, and bullet holes in the ceiling. He agreed that the evidence was consistent with the shooter of the .45 caliber Springfield Armory shooting two focused shots into the vehicle, and then Mr. Allen returning fire in a "sporadic fashion." He further indicated that it "makes sense" for a wounded Mr. Allen to drop the .40 caliber Smith and Wesson on the rear

floorboard. He testified that the trajectory put the "shooter [outside the vehicle]," close to the vehicle or a couple feet away.

The State also presented the following other crimes evidence at trial. In April 2015, Detective Jean Lincoln and Sergeant Justin Remes with the Jefferson Parish Sheriff's Office were involved in an investigation regarding the shooting of Rogelio Polledo at the Belle Meade apartment complex. Both indicated that it was an attempted armed robbery.

Sergeant Remes explained that the victim sustained a gunshot wound to the leg while inside his vehicle. The victim was transported to the hospital prior to Detective Lincoln's arrival. Upon Detective Lincoln's arrival on the scene, he observed a bloody passenger seat with three bullet holes in it. Two bullet casings were found inside the vehicle, and one was found outside the vehicle. Marijuana with blood on it was also located inside the vehicle.

The victim identified the suspect from a photographic lineup. An arrest warrant for Mr. Tate for attempted armed robbery and shooting was obtained, and Mr. Tate was subsequently arrested. While initially the victim had been cooperative with the investigation, after his cell phone was held for processing, the victim became uncooperative. Detective Lincoln agreed that it is very common for "victims of drug rips" to be uncooperative. The case surrounding the April 2015 incident was ultimately dismissed due to the victim's refusal to cooperate in the prosecution of the matter. At trial, Mr. Tate acknowledged that he had been arrested and charged with attempted robbery in 2015 and that the case had been dismissed. Mr. Tate denied knowing anyone named "Rogelio or Roger Polledo" or being involved in an attempted robbery involving a shooting in Belle Meade in 2015. Mr. Tate further testified that he was prepared to go to trial in that case and prove his innocence.[4]

Tate was tried before a jury on August 8 through 10, 2022.[5] The jury found him guilty as charged of second-degree murder and not guilty of conspiracy to commit armed robbery.[6] Counsel for Tate filed a motion for a new trial and motion for post-verdict judgment of acquittal, which

---

[4] *State v. Tate*, 368 So. 3d 236, 239-244, No. 22-KA-570, (La. App. 5th Cir. June 21, 2023); ECF No. 15-1 at 2438-2446, 5th Cir. Opinion, 22-KA-570, 6/21/23.
[5] ECF No. 15-1 at 621-23, Trial Mins., 8/8/22; *id*. at 630-32, Trial Mins., 8/9/22; *id*. at 651-53, Trial Mins., 8/10/22; *id*. at 1902-2351, Trial Tr., 8/8-10/22.
[6] *Id*. at 654-57, Jury Verdict Forms, 8/10/22.

were denied by the state trial court on August 29, 2022.[7] That same day, the state trial court sentenced Tate to life imprisonment without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal to the Louisiana Fifth Circuit, Tate's appointed counsel asserted two claims:

(1)    The State failed to prove beyond a reasonable doubt that the homicide was not done in self-defense. . . .

(2)    The [state trial] court improperly allowed the State to use "other crimes evidence" to demonstrate an alleged modus operandi for Tate. . . . stemm[ing] from a 2015 arrest for attempted armed robbery that was nolle prossed by the very prosecutor who prosecuted Tate for the charged offense in this case.[9]

On June 21, 2023, the Louisiana Fifth Circuit affirmed Tate's convictions and sentences, finding the two claims meritless.[10] The court did, however, remand the matter to state trial court to correct a discrepancy between the minute entry and uniform commitment order when compared to the sentencing transcript as to Tate's sentence being run concurrently with any and all other sentences.[11] Tate's conviction became final 30 days later, on July 21, 2023, when he did not file for review in the Louisiana Supreme Court.[12]

One hundred and ninety-nine (199) days later, on February 5, 2024, Tate filed an application for post-conviction relief in the state trial court asserting three claims:

---

[7] *Id*. at 678, Sentencing Mins., 8/29/22.

[8] *Id*.

[9] ECF No. 15-1 at 2360-61,Appeal Brief, 2022-KA-570, 1/13/22.

[10] *Tate*, 368 So. 3d at 246-49; ECF No. 15-1, 5th Cir. Opinion, 22-KA-570, at 2451-56, 6/21/23.

[11] *Id*. at 249-50; ECF No. 15-1 at 2456.

[12] La. Sup. Ct. Rule X § 5 (setting a 30-day period for seeking review in the Louisiana Supreme Court); LA. CODE CRIM. PROC. art. 922 (addressing finality of appeal judgment); *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

(1)     ineffective assistance of counsel when defense counsel failed to protect due process rights and witness confrontation rights by failing to investigate and call witnesses;

(2)     ineffective assistance of counsel by allowing evidence of prior bad acts and insufficient evidence; and

(3)     ineffective assistance counsel by failing to a call a witness whose testimony was crucial to debunking the State's theory that defendant was the aggressor and not acting in self-defense.[13]

On July 23, 2024, Tate filed a supplement to the post-conviction application in which he asserted four additional claims:

(4)     ineffective assistance of counsel for counsel's failure to prepare a defense to support defendant's claim of self-defense;

(5)     ineffective assistance of counsel for failure to effectively cross-examine witness Kremly Marrero;

(6)     ineffective assistance of counsel for counsel's failure to request a mistrial concerning the State's use of La. C. E. art. 404(B) other crimes evidence; and

(7)     ineffective assistance of counsel for counsel's failure to cross examine expert witness Tim Scanlan about sporadic gun fire and focus gun fire.[14]

On August 6, 2024, the state trial court ordered the State to respond to Tate's application for post-conviction relief.[15]   The State filed an opposition response to Tate's post-conviction application on October 10, 2024.[16]   On November 21, 2024, the state trial court denied Tate's application holding that Tate's ineffective assistance of counsel claims were meritless under *Strickland*, 466 U.S. at 668, and related case law.[17]   On November 22, 2024, Tate filed a reply to the State's October 10, 2024, opposition response.[18]   By order issued December 5, 2024, the state

---

[13] ECF No. 15-1 at 858-62, Application for Post-Conviction Relief, 2/5/24.

[14] *Id*. at 924-29, Supplement to Application for Post-Conviction Relief, 7/23/24.

[15] *Id*. at 985-86, Trial Court Order, 8/6/24.

[16] *Id*. at 1002-19, State's Response, 10/10/24.

[17] *Id*. at 1025-29, Trial Court Order, 11/21/24.

[18] *Id*. at 1032-33, Objection to State's Response, 11/22/24.

trial court noted receipt of Tate's pleading but found no basis to disturb its November 21, 2024, ruling denying the application.[19]

On December 19, 2024, Tate filed a writ application with the Louisiana Fifth Circuit seeking review of the trial court's November 21, 2024, order denying his post-conviction application.[20] On January 29, 2025, the court denied Tate's writ application finding no error in the trial court's December 3, 2018, order and agreeing that Tate could not overcome the presumption that counsel's actions "might be considered strong trial strategy" under *Strickland*, 466 U.S. at 689, and failed to prove ineffective assistance of counsel.[21]

On June 3, 2025, the Louisiana Supreme Court denied Tate's writ application finding that he failed to meet his burden of proof under *Strickland*.[22] The court also noted that Tate's application for post-conviction relief was fully litigated in state court and he had exhausted his right to state collateral review barring a showing of one of the narrow exceptions authorizing the filing of a successive application.[23]

## II.    <u>FEDERAL HABEAS PETITION</u>

Tate filed a petition for federal habeas corpus relief on July 8, 2025, as supplemented by his August 26, 2025, filing, asserting the following claims:

(1)    he received ineffective assistance of counsel when counsel failed to effectively cross examine the state's expert witnesses, Dr. Tim Scanlan and Dr. Dana Troxclair, by failing to present exculpatory evidence, such as crime lab evidence, crime scene evidence, and an autopsy report, regarding his claim of self-defense; and

---

[19] *Id*. at 1036, Trial Court Order, 12/5/24.

[20] *Id*. at 2562-68, 5th Cir. Writ Application, 24-KH-636, 12/19/24.

[21] *Id*. at 1047-57, 5th Cir. Order, 24-KH-636, 1/29/25.

[22] *Tate v. State*, 410 So. 3d 782 (La. 6/3/25); ECF No. 15-1 at 2709, La. Sup. Ct. Order, 25-KH-0285, 6/3/25; *Id*. at 2653-67, La. Sup. Ct. Writ Application, 25-KH-0285, 2/25/25.

[23] *Tate,* 410 So. 3d at 782; ECF No. 15-1 at 2709, La. Sup. Ct. Order, 25-KH-0285, 6/3/25.

(2)    he suffered a due process violation when he did not receive an evidentiary hearing in state court concerning claims in his application for post-conviction relief.[24]

The State filed a response in opposition to Tate's petition and supplemental memorandum conceding timeliness.[25] As to Tate's ineffective assistance of counsel claim in relation to Dr. Dana Troxclair, the State asserted petitioner failed to exhaust that claim, and any such argument or claim would be in procedural default due to the doctrine of technical exhaustion.[26] The State further asserted that Tate's ineffective assistance of counsel claim in relation to Dr. Tim Scanlan is meritless under *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny, and the denial of relief was neither contrary to nor an unreasonable application of federal law.[27] As to any due process violation claim regarding denial of an evidentiary hearing on his application for post-conviction relief, the State asserted the question of whether Tate was entitled to an evidentiary hearing is purely a matter of state law and not cognizable on federal habeas review.[28]

In his reply, Tate concedes his ineffective assistance of counsel claim regarding Dr. Dana Troxclair was not adequately raised in the state court proceedings, but claims that the procedural bar must be excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).[29] Tate reiterates his ineffective assistance of counsel claim as to Dr. Tim Scanlan stating that counsel was ineffective by failing to present scientific evidence directly contradicting Dr. Scanlan's testimony.[30] Tate further states he was denied due process in regards to an evidentiary hearing on his post-conviction

---

[24] ECF No. 1; ECF No. 4 at 5, 7; ECF No. 10 at 1-12.
[25] ECF No. 17 at 20-21.
[26] *Id*. at 21-29.
[27] *Id*. at 29-37.
[28] *Id.* at 37-39.
[29] ECF No. 24 at 2-5.
[30] *Id*. at 5-11.

proceedings as he has requested an evidentiary hearing at every step of the process, including federal habeas review, and continues to be denied.[31]

### A. **Motion to Stay**

When filing his federal habeas petition, Tate also filed a motion requesting the court stay his federal habeas proceedings.[32]  In his motion, Tate states he is unsure of exact one-year deadline under 28 U.S.C. § 2244 and requests the court to hold his application in abeyance until he submits a memorandum of law in support of his petition that is currently being litigated.[33]  In its opposition to the motion to stay, the State asserts that Tate's motion is moot.[34]  The State argues a stay is not warranted as Tate's petition is timely and he successfully submitted his memorandum in support to his federal habeas petition.[35]

### B. **Motion for Evidentiary Hearing**

In addition, Tate also filed a motion requesting an evidentiary hearing as to his claims for ineffective assistance of counsel.[36]  Tate states he has requested an evidentiary hearing at every level of state court proceedings and has been carefully ignored.[37] He further asserts he has not failed to develop the factual basis of his ineffective assistance of counsel claim in state court, but has been prevented by state action from developing said factual basis due to the denial of an evidentiary hearing.[38] As a result, Tate requests the court grant him an evidentiary hearing on his

---

[31] *Id*. at 12-14.
[32] ECF No 2.
[33] *Id*. at 1.
[34] ECF No. 16 at 1.
[35] *Id*. at 1-2.
[36] ECF No. 23.
[37] *Id*. at 3.
[38] *Id*. at 5-7.

ineffective assistance of counsel claims.[39]

## III.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996,[40] and applies to habeas petitions filed after that date.[41]   Tate's petition is deemed filed on July 1, 2024.[42]

### A.    Stay Not Warranted

At the time of filing his habeas petition, Tate filed a motion to stay and hold in abeyance.[43] In *Pliler v. Ford*, 542 U.S. 225, 227 (2004), the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. The *Pliler* court ultimately reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion.[44] The Supreme Court recognized that a petitioner had two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted

---

[39] *Id*. at 7.

[40] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F. 2d 1501, 1505 (5th Cir. 1992).

[41] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[42] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.   *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The petition is signed and dated by Tate on July 1, 2025, which is the soonest date of receipt that a prison legal department may have received the filing for mailing purposes. ECF No. 1 at 15 (filed after deficiency corrected at ECF No. 4 at 15).

[43] ECF No. 2.

[44] *Id*. at 233.

claims in the federal district court.[45]

The Supreme Court later held that stay-and-abeyance is an extraordinary remedy not to be made readily available to a habeas petitioner.[46] The *Rhines* Court warned that staying federal habeas corpus petitions and holding them in abeyance, "if employed too frequently, has the potential to undermine [the above-described] twin purposes", explaining:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.[47]

The Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the court determines that there was "good cause" for the failure to fully exhaust state court remedies on all claims raised.[48] Stays are improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay."[49]

Tate requests the court to stay his federal habeas petition as he is unsure about timeliness and for him to file a memorandum in support.[50] As previously mentioned, the State concedes timeliness, and Tate filed his memorandum in support prior to the State's response. As to Tate's unexhausted ineffective assistance of counsel claim regarding Dr. Dana Troxclair, a stay is not warranted. For reasons explained later in this Report, if Tate were to return to state court in attempt

---

[45] *Id.*
[46] *Rhines v. Weber*, 544 U.S. 269, 278 (2005).
[47] *Id.* at 277.
[48] *Id.* (emphasis added).
[49] *Id.*
[50] ECF No. 2 at 1.

to fully exhausted his claim, he would be procedurally barred from doing so by LA. CODE CRIM. P. art. 930.8.[51] Further, a stay is also improper as Tate's claims are plainly meritless. Thus, it is recommended that Tate's motion to stay be denied.

### B. Federal Evidentiary Hearing Not Warranted

Tate has not established that he is entitled to a federal evidentiary hearing on his ineffective assistance of counsel claim. Whether to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2), which provides that, when a petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing," except under the limited circumstances set forth in the statute.[52]

To the extent Tate requests an evidentiary hearing to develop the merits of his ineffective assistance of trial counsel claim related to the cross-examination of Dr. Troxclair, he is not so entitled. Evidentiary hearings are limited by the parameters set forth in 28 U.S.C. § 2254(e)(2), which provides for a hearing only when the claim either "rel[ies] on a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by [the United States Supreme] Court"; or "on a 'factual predicate that could not have been previously discovered

---

[51] Article 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final. Although there are exceptions provided in the article, those exceptions to do not appear to be applicable to Tate's ineffective assistance of counsel claim regarding Dr. Dana Troxclair.

[52] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).   28 U.S.C. § 2254(e)(2) provides as follows:
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on –
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

through the exercise of due diligence.'"[53]   Neither situation exists in this case, as this is not a matter of new, retroactive constitutional law nor has Tate shown that the factual predicate for the claim could not previously have been discovered with the exercise of due diligence.

As to the ineffective assistance of counsel claim regarding counsel's cross-examination of Dr. Tim Scanlan, Tate diligently pursued and fully developed his claim in the state courts.[54] Although he is not necessarily or *per se* barred from a federal evidentiary hearing under the conditions in the statute, the Supreme Court has made clear that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[55] This limitation "applies even where there has been a summary denial" of the merits in state court proceedings.[56]   Thus, the decision to grant an evidentiary hearing is "generally left to the sound discretion of district courts," which must "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."[57]   No evidentiary hearing is required "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief. . . . ,"[58] or where there is no "factual dispute which, if resolved in [the petitioner's] favor, would entitle him to relief."[59]

As this Report will show, the record does not support Tate's claims and does not establish his entitlement to any federal habeas relief. This court therefore need not conduct an evidentiary

---

[53] *Shoop v. Twyford*, 142 S. Ct. 2037, 2044 (2022) (quoting 28 U.S.C. § 2254(e)(2)(A)(i) and (ii)).

[54] *Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("failed to develop" means a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.").

[55] *Cullen*, 563 U.S. at 181; *Allen v. Vannoy*, 659 F. App'x 792, 810-11 (5th Cir. 2016) (citations omitted).

[56] *Cullen* at 187 (citation omitted).

[57] *Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (citations omitted); *Allen*, 659 F. App'x at 811.

[58] *Schriro*, 550 U.S. at 465-66.

[59] *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

hearing or accept new testimony or evidence not previously before the state courts. For these reasons, Tate's motion for an evidentiary hearing must be denied.

### C. <u>Preliminary Considerations</u>

The two threshold questions in habeas review under the amended statute are (1) whether the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state court. In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[60] As to the first consideration, the State concedes that Tate's federal habeas petition is timely filed.[61]

### 1. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[62] "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[63] The exhaustion requirement is normally satisfied only if the petitioner previously presented his claims for relief to the state's highest court in a procedurally proper manner according to state court rules.[64] In Louisiana, the highest state court is the Louisiana Supreme Court.[65]

---

[60] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)) ("If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the prisoner has procedurally defaulted his federal habeas claim." (citations omitted)).

[61] ECF No. 17 at 21.

[62] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).

[63] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).

[64] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

[65] *See* La. Const. art. V, § 5(A).

Tate raised his claim of ineffective assistance of counsel regarding counsel's failure to effectively cross-examine Dr. Tim Scanlan before the trial court, on direct appeal, and to the Louisiana Supreme Court.   That claims is therefore exhausted. With regard to the claim of ineffective assistance of counsel due to counsel's cross-examination of Dr. Dana Troxclair, Tate concedes he did not adequately raise that claim in state court proceedings.[66] Since the ineffective of counsel claim involving Dr. Dana Troxclair was not asserted at each level of the state court system, it is unexhausted.

The United States Fifth Circuit Court of Appeals has held that, "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are considered defaulted in federal court.[67]   In this case, there is little doubt that any new attempt by Tate to exhaust his ineffective assistance of counsel claim involving Dr. Dana Troxclair would be rejected by the state courts on procedural grounds. Given that Tate did not raise this claim in his post-conviction proceedings, if he attempted to file a second application for post-conviction relief asserting that claim, his application would be denied as untimely under La. Code Crim. P. art. 930.8.[68]

A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion, because there are no state remedies any longer "available" to him.[69]

---

[66] ECF No. 24 at 2.

[67] *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).

[68] Article 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final.   Although there are exceptions provided in the article, those exceptions to do not appear to be applicable to Tate's claim.

[69] *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *see* 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (citing *Engle v. Isaac*, 456 U.S. 107, 125-126, n.28 (1982)). The United States Supreme Court has determined that the exhaustion requirement " 'refers only to remedies still available at the time of the federal petition,'

As the state-court review of Tate's unexhausted claim must be deemed technically exhausted, the claim must be evaluated for procedural default.[70] The procedural bar created by a petitioner's technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted claim.[71]

The State argues that Tate is procedurally defaulted in bringing his claim of ineffective assistance of counsel regarding counsel's cross-examination of Dr. Troxclair as the state court would find Tate procedurally barred from bringing the claim under La. Code Crim. P. art 930.8.[72] The State, however, has not addressed or considered the propriety of a procedural bar to the ineffective assistance of trial counsel claim under the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). In *Martinez*, the Supreme Court held that a procedural bar imposed by a state court "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"[73] The court need not require argument on this point, however, because the

---

[and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.' " (citations omitted) *Gray*, 518 U.S. at 161-62 (quoting *Engle*, 456 U.S. at 125 n.28, and *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

[70] *See Gray*, 518 U.S. at 162 ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); *Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas ...").

[71] *Gray*, 518 U.S. at 162 ("[t]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); *see also Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas...."); *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

[72] ECF No. 17 at 27.

[73] *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17). As later shown in this Report, Tate has no substantial claim of ineffective assistance of trial counsel that would provide any relief under *Martinez*.

ineffective assistance of trial counsel claim is not substantial and is wholly meritless, and this court will dispose of Tate's ineffective assistance of counsel claim regarding the cross-examination of Dr. Dana Troxclair on the merits.[74]

### D.  AEDPA Standards of Merits Review

Title 28 U.S.C. § 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[75] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[76]   The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.[77]

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).   The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[78]   The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

---

[74] 28 U.S.C. § 2254(b)(2).

[75] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[76] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

[77] 28 U.S.C. § 2254(e)(1).

[78] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[79]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[80]   "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[81]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[82]   Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[83]   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[84]

---

[79] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[80] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[81] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[82] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (internal citations omitted)).

[83] *Neal v. Puckett*, 286 F.3d 230, 246 & n.14(5th Cir. 2002) (citing cases).

[84] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

### 1.  Effective Assistance of Trial Counsel (Claim 1)

Tate alleges that he received ineffective assistance of counsel when his trial counsel failed to effectively cross-examine the state's expert witnesses, Dr. Tim Scanlan and Dr. Dana Troxclair, at trial.[85] Tate claims that during cross-examination trial counsel failed to introduce crime lab, crime scene evidence, and autopsy reports that would have contradicted the experts' testimony and aided in their theory of self-defense.[86]

The State argues that Tate's claim involving the cross-examination of Dr. Troxclair is procedurally barred as he failed to exhaust the claim in the state courts.[87]  The State asserts that the state courts' denial of relief on Tate's claim, as to Dr. Scanlan, under *Strickland* and its progeny was not contrary to, or an unreasonable application of, Supreme Court law.[88]  The State asserts that trial counsel's decisions concerning the cross-examination of Dr. Scanlan were trial strategy. As to Tate's assertion that had trial counsel used certain evidence in cross-examination it would have contradicted Dr. Scanlan's testimony and corroborated that Tate acted in self-defense, the State asserts that the crime scene report, autopsy report, ballistics report, and crime scene photographs were presented in the State's case-in-chief and would not have resulted in a different outcome had trial counsel used that evidence during cross-examination.[89]

### a.    State Court Rulings

As previously mentioned, Tate did not raise his ineffective assistance of counsel claim regarding the cross-examination of Dr. Troxclair in the state courts. Tate initially asserted his

---

[85] ECF No. 4 at 5.
[86] *Id*.
[87] ECF No. 17 at 27.
[88] *Id*. at 36-37.
[89] *Id*. at 27.

claims of ineffective assistance of trial counsel for failing to effectively cross-examine Dr. Tim

Scanlan in his 2024 state application for post-conviction relief.[90]   The state trial court denied relief

on the claims citing his failure to meet the *Strickland* standards.[91]   The state trial court noted:

> Counsel's choice of which questions to ask witnesses goes directly to counsel's
> trial strategy. Defense counsel questioned Dr. Scanlan regarding his ballistics and
> addressed the defendant's claim of self-defense. The court finds the defendant's
> allegations regarding ineffective assistance of counsel to be speculative and
> conclusory. The defendant offers no proof of deficiency in counsel's performance,
> or of any prejudice resulting."[92]

On January 29, 2025, the Louisiana Fifth Circuit also denied relief finding no error in the

trial court's reasoning and that counsel's cross-examination of Dr. Scanlan did not fall below an

objective standard of reasonableness.[93]   The Louisiana Supreme Court also denied Tate's related

writ application on February 25, 2025, citing Tate's failure to meet his burden of proof under

*Strickland*.[94]

      b.    *Strickland* Standards

The issue of effective assistance of counsel is a mixed question of law and fact.[95]   Under

the AEDPA standards outlined previously, this court must determine whether the state courts'

denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

As eluded to previously, in *Strickland*, relied on by the Louisiana courts, the United States

Supreme Court established a two-part test for evaluating claims of ineffective assistance of

---

[90] ECF 15-1 at 859, Application for Post-Conviction Relief, 2/5/24.

[91] *Id.* at 1021, Trial Court Order, 11/21/24.

[92] *Id.*

[93] *Id.* at 1053, 5th Cir. Order, 24-KH-636, 1/29/25.

[94] *Tate,* 410 So. 3d at 782; ECF No. 15-1 at 2709, La. Sup. Ct. Order, 25-KH-0285, 6/3/25.

[95] *Strickland,* 466 U.S. at 698 (citation omitted); *Clark v. Thaler,* 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain,* 609 F.3d 744, 789 (5th Cir. 2010) (citing *Richards v. Quarterman,* 566 F.3d 553, 561 (5th Cir. 2009).

counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[96]    The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[97]    Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[98]    A court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of a claim based solely on a petitioner's failure to meet either prong of the test.[99]    A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[100]

The Supreme Court has clarified that, on habeas review under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[101]    "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."[102]    The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[103]

---

[96] *Strickland*, 466 U.S. at 697.

[97] *Id.* at 687-88.

[98] *Id.* at 694; *accord*, *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[99] *Id*. at 893 (citation omitted).

[100] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[101] *Harrington*, 562 U.S. at 105 (internal quotations and citation omitted).

[102] *Id*.

[103] *Strickland*, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by a petitioner.[104]  "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[105]  A federal habeas court must eliminate the distorting effects of hindsight, reconstruct the circumstances of counsel's challenged conduct, and evaluate the conduct from counsel's perspective at the time of trial.[106]  Tactical decisions, when supported by the circumstances, are objectively reasonable and not deficient performance.[107]

### c.    Trial Counsel's Cross Examination of the State's Expert Witnesses

Tate alleges that he received ineffective assistance of counsel when his trial counsel failed to effectively cross-examine the state's expert witnesses, Dr. Tim Scanlan and Dr. Dana Troxclair, at trial.[108] Tate claims that during cross-examination trial counsel failed to introduce crime lab, crime scene evidence, and autopsy reports that would have contradicted the experts' testimony and aided in their theory of self-defense.[109]

As the state courts resolved, Tate has not shown deficiency in his counsel's questioning of Dr. Scanlan at trial. Upon review of the record, the court finds the same applies to counsel's questioning of Dr. Troxclair. The method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude.[110]  "The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential

---

[104] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) *superseded by statute on other grounds as stated in Hernandez v. Thaler*, 463 F. App'x 349, 356 (5th Cir. 2012).

[105] *Harrington*, 562 U.S. at 105 (citations and quotations omitted).

[106] *Strickland*, 466 U.S. at 689; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000) (citation omitted).

[107] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997), and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[108] ECF No. 4 at 5.

[109] *Id.*

[110] *See United States v. Octave*, No. 12cr205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011)).

exercise of professional judgment."[111]    As the United States Supreme Court has cautioned, federal habeas courts are not to second-guess counsel's decisions on matters of trial strategy, and instead must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance.[112]    It is also irrelevant that another attorney might have made other choices or handled such issues differently.    "There are countless ways to provide effective assistance in any given case.    Even the best criminal defense attorneys would not defend a particular client in the same way."[113] It is likewise necessary to remember that when a petitioner is asserting a claim of inadequate cross-examination, he bears the burden to prove to show "how a different cross-examination would have created a reasonable probability of a different outcome."[114]

In Tate's case, the trial transcript reflects that his counsel questioned Dr. Troxclair on cross-examination about the procedure for conducting the autopsy, the levels of Tramadol and THC in the decedent's blood, and the effects they may have on an individual.[115] As for Dr. Scanlan, the trial transcript reflects that Tate's counsel cross-examined the expert on the ballistics evidence and distance and trajectory at which bullets may have been fired by the shooter.[116]

The record demonstrates that defense counsel attempted to discredit the State's case through cross-examination of the state's expert witnesses and others, in an effort to bolster the theory that Tate acted in self-defense. Most notably, Tate took the stand at trial and testified to

---

[111] *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, Nos. 06-2224 c/w 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. Aug. 9, 2006).

[112] *Strickland*, 466 U.S. at 689.

[113] *Id.*

[114] *Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir. 2016).

[115] ECF No. 15-1 at 2060-63, Trial Tr., 8/9/22.

[116] *Id*. at 2241-42, Trial Tr., 8/9/22.

counsel's theory of self-defense stating that the interaction between him and the decedent became heated when the decedent became aggressive, the decedent shot first, and that Tate returned fire as he feared for his life.[117] The jury heard the testimony. The fact that the jury did not believe the theory defense offered does not render counsel's performance constitutionally deficient.[118] "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[119]

Tate has not met the requirements to support his *Strickland* claim. He offers only self-serving, speculative, and conclusory allegations that a different set of cross-examination questions asked to the state's experts by trial counsel would have better discredited the state's evidence and witness testimony. Therefore, Tate has failed to meet his burden of proof with respect to this claim.[120]

For the foregoing reasons, Tate has failed to meet either prong of the *Strickland* standard or establish an error in the state courts' conclusions under *Strickland* in denying relief on his claims of ineffective assistance of counsel. Tate, therefore, has not established that the state courts' denial

---

[117] *Id.* at 2280-83, Trial Tr., 8/10/22.

[118] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

[119] *Strickland*, 466 U.S. at 689 (citations omitted).

[120] *See United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Anthony v. Cain*, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Buniff v. Cain*, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011) (same); *Combs v. United States*, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, No. 06-490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

of relief was contrary to or an unreasonable application of Supreme Court law. Thus, Tate is not entitled to federal habeas corpus relief on his claims of ineffective assistance of counsel.

### 2. Denial of an Evidentiary Hearing in State Court (Claim 2)

Tate argues the state courts violated due process by dismissing his state post-conviction claims without an evidentiary hearing. However, it is well settled that, "[i]nfirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief."[121] An attack on the validity of the state habeas corpus proceeding does not impact the validity of the underlying state criminal conviction which is the focus of federal habeas relief.[122]

The fact that the state courts denied Tate post-conviction relief without an evidentiary hearing does not present a cognizable federal habeas claim.[123] The question of whether Tate was entitled to an evidentiary hearing on state post-conviction relief is purely a matter of state law. Thus, Tate is not entitled to federal habeas relief on his alleged due process violation for the state court's failure to hold an evidentiary hearing during his post-conviction proceedings.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Steven Tate's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[121] *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984); *see also Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001) ("[I]nfirmities in state habeas proceeding are not proper grounds for federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court.").

[122] *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) ("[A]n attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself.").

[123] *See Miller v. Hooper*, 2022 WL 2181327, at *32 (E.D. La. Apr. 18, 2022), *adopted*, 2023 WL 7489930 (E.D. La. Nov. 13, 2023) (a claim that the state courts erred in dismissing petitioner's claims without an evidentiary hearing did not present a cognizable federal habeas claim).

It is **FURTHER RECOMMENDED** that Tate's Motion to Stay and Hold in Abeyance (ECF No. 2) and Motion for Evidentiary Hearing (ECF No. 23) be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[124]

New Orleans, Louisiana, this __17th__ day of December, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[124] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).